# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 17-1182V
UNPUBLISHED

|  |  |
|---|---|
| JEFFERY ROWE,<br><br>               Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Dated: September 24, 2020<br><br>Special Processing Unit (SPU); Six<br>Month Residual Effects or Sequelae;<br>Tdap Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Shealene Priscilla Mancuso, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Sarah Christina Duncan, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDING OF FACT ON SIX MONTH/SEVERITY REQUIREMENT[1]

On September 1, 2017, Jeffery Rowe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered left shoulder injuries as a result of receiving a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine on July 26, 2016. *See* Petition at preamble. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

Petitioner filed a motion for a factual ruling determining that he has satisfied the requirements of Section 11(c)(1)(D)(i) of the Vaccine Act (ECF No. 25). For the reasons

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

discussed below, I find that Petitioner suffered the residual effects of his alleged vaccine-related injury for more than six months after vaccination, as required by the Vaccine Act.

I.  **Relevant Procedural History**

On May 21, 2018, Respondent filed a status report stating that an initial review of this case had been completed. (ECF No. 27). Respondent requested that Petitioner file "[m]edical records indicating that petitioner experienced sequela of his alleged injury for more than six months following his July 26, 2016 vaccination (most recent record is for an MRI conducted on January 2, 2017)." § 11(c)(1)(D)(i). Former Chief Special Master Dorsey agreed that additional evidence was necessary, and she ordered Petitioner to file evidence that he satisfied the six-month sequela requirement by July 13, 2018. *Id*.

Over the next ten (10) months, Petitioner filed six motions for enlargements of time to file this additional evidence. An Order to Show Cause due to failure to prosecute and to meet the minimum statutory requirements was issued on July 30, 2019. (ECF No. 47). Petitioner's counsel filed a response to the Order to Show Cause explaining that she had experienced difficulty reaching her client to obtain the evidence to satisfy the statutory six month requirement. (ECF No. 48). Petitioner was granted an additional 30 days to file the evidence or risk having the petition dismissed. (ECF No. 49).

Over the next few months, Petitioner filed several status reports stating that he was receiving additional medical treatment and would be filing updated medical records to support his claim. (ECF Nos. 50, 53). Petitioner filed these additional medical records and was ordered to file a motion for a factual ruling to determine whether he had satisfied the six month sequela requirement. (ECF No. 59). After requesting an additional enlargement of time, Petitioner filed his motion on June 5, 2020. (ECF No. 61). Respondent filed a response on July 6, 2020, stating that he "defers to the Chief Special Master as to whether petitioner suffered the residual effects of his alleged injury for more than six months after the administration of the vaccine to satisfy the severity requirement under the Vaccine Act." (ECF No. 62). This issue is now ripe for adjudication.

II.  **Factual Summary**

On July 26, 2016, Mr. Rowe received a Tdap vaccination in his left arm at Spectrum Health Integrated Care Campus – East Beltline in Grand Rapids, Michigan. Petitioner's Exhibit ("Ex.") 1 at 1-2; Ex. 2 at 4; Ex. 11 at 1; Ex. 13 at 5. His medical history is void of any prior issues with his left shoulder. *See generally* Ex. 2. Five days after vaccination, on July 31, 2016, Mr. Rowe presented to PC Urgent Care South Pavilion with complaints of left shoulder pain, swelling and limited movement since receiving his Tdap vaccine. Ex. 2 at 5-8. On examination, he presented with mild swelling and redness over his left shoulder, as well as diffuse pain and decreased range of motion of the left shoulder due

to pain. *Id*. Mr. Rowe was diagnosed with a local reaction to the immunization and prescribed pain and anti-inflammatory medications. *Id*. He was instructed to follow up with his primary care provider ("PCP"). *Id*.

Approximately two weeks later, on August 9, 2016, Mr. Rowe presented to his PCP with ongoing complaints of left shoulder pain and progressive left shoulder weakness since receiving the Tdap vaccine. Ex. 3 at 26-29. He was diagnosed with acute pain of the left shoulder, an injection site reaction, and observed to have a "[v]ery limited ROM." *Id*. at 29. Mr. Rowe was instructed to continue with his NSAIDS for inflammation and pain management and given a referral for physical therapy. *Id*. An ultrasound conducted on August 15, 2016 was unremarkable. Ex. 4 at 4.

Mr. Rowe underwent a physical therapy evaluation on August 19, 2016. Ex. 9 at 17. On examination, he was noted to have "some numbness in mid upper arm to mid forearm, but not along any certain distribution. S[ymptoms] appear musculoskeletal in nature. P[atien]t needs skilled [physical therapy] to address these areas and decrease pain and improv function." *Id*. He was prescribed physical therapy one to two times a week for four to six weeks. *Id*. at 20.

Mr. Rowe was seen by Dr. Matthew Dubiel in follow up on August 31, 2016 and diagnosed with left chronic left shoulder pain. Ex. 8 at 37.  Mr. Rowe was encouraged to continue taking his over-the-counter medications and to rest and ice his shoulder. *Id*.

Mr. Rowe returned to his PCP on November 22, 2016, with ongoing complaints of left shoulder pain. The notes from this visit indicate that the vaccine was "administered a little too high" on his left shoulder and was thought to have caused the shoulder pain. *Id*. Mr. Rowe reported that he had "doubled up" on his dosage of pain medication at night to help him sleep. *Id*. He stated that physical therapy was not improving his pain. *Id*. On examination, he continued to exhibit a decreased range of motion, tenderness, pain and decreased strength. *Id*. at 35. He was referred to an orthopedic for consideration of surgery. Ex. 3 at 32-36.

On December 14, 2016, Mr. Rowe presented to Nurse Practitioner ("NP") Nathan Bouwkamp at NK GR Orthopaedic and Foot and Ankle Surgery with complaints of ongoing left shoulder pain since receiving the Tdap vaccine. Ex. 5 at 10. He underwent a left shoulder x-ray which was unremarkable. *Id*. After an examination of the left shoulder, Mr. Rowe was diagnosed with adhesive capsulitis, chronic left shoulder pain and a suspected rotator cuff tear of the left shoulder. *Id*. at 12. NP Bouwkamp noted that "[w]e discussed the three phases of frozen shoulder and how it can take up to 2 years to resolve on it[s] own." *Id*. Mr. Rowe was instructed to avoid heavy lifting and overhead activities with the affect arm. *Id*.

3

An MRI conducted on January 2, 2017 revealed mild supraspinatus tendinosis without evidence of a tear. Ex. 4 at 1. Two days later, on January 4, 2017, Mr. Rowe returned to Orthopedic and Foot and Ankle Surgery to review the result of his MRI with Dr. James Lebolt. Ex. 5 at 17. Dr. Lebolt examined Petitioner's left shoulder and noted a "structurally sound shoulder without evidence of rotator cuff, labral tear or condrol defect." *Id*. at 19. Mr. Rowe was prescribed NSAIDs and physical therapy to treat his injury. *Id*. He was instructed to return if his symptoms did not improve and the plan was to exhaust all conservative options first before proceeding with any surgical intervention. *Id*.

Mr. Rowe was not seen for treatment of his left shoulder for the remainder of 2017, and pursued treatment for unrelated medical issues throughout 2018 and 2019. (*See generally* Ex. 14; Ex. 15). There is no mention of any left shoulder issues or related treatment in any of these updated records.

III.   **Legal Standard and Analysis**

The purpose of the Vaccine Act is to award "vaccine-injured persons quickly, easily, and with certainty and generosity." *Weddel v. Sec'y of Health & Human Servs.*, 100 F. 3d 929, 932 (Fed. Cir. 1996) (*quoting* H.R. Rep. No. 99-908, at 3 (1986)). The Act was meant to remedy the problem that "for the relatively few who are injured by vaccines – through no fault of their own – the opportunities for redress and restitution [were] limited, time consuming, expensive, and often unanswered." *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1325 (Fed. Cir. 2011) (en banc) (*quoting* H.R. Rep. No. 99-908, at 6 (1986)). As a result, the program places some emphasis on speed and efficiency, especially in close cases.

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of Petitioner's injury or illness that is contained in a medical record. § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The Vaccine Act requires that a Petitioner demonstrate that "residual effects or complications" of a vaccine related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A Petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A).  "[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4

(Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). In another SPU case, where a Petitioner's last treatment was at five months and nine days, the Petitioner was found to meet the six month requirement. *Schafer v. Sec'y of Health & Human Servs.*, No. 16-0593V, 2019 WL 5849524 (Fed. Cl. Spec. Mstr. Aug. 28, 2019). In that case, the special master noted that it was unlikely "that petitioner's shoulder symptoms would have resolved within 22 days." *Id.* at *7.

In this case, it is undisputed that Petitioner received a Tdap vaccination on July 26, 2016 in his left deltoid. The parties have not raised any dispute concerning the onset of Petitioner's left shoulder pain and there is preponderant evidence that the onset of his pain was immediate. Ex. 2 at 5-8. The parties also have not disputed that Petitioner was seen by Dr. Lebolt on January 4, 2017 - 22 days short of the six-month period – and there are no subsequent records establishing further shoulder treatment. In order for Petitioner to establish more than six months of residual effects, he must demonstrate that his residual symptoms continued until at least January 26, 2017, approximately three weeks after his appointment with Dr. Lebolt.

Unquestionably, as of January 4, 2017, Mr. Rowe was still experiencing left shoulder symptoms, including left shoulder pain, and sought treatment for the symptoms at that time. His MRI taken just two days earlier on January 2, 2017, demonstrated mild supraspinatus tendinosis and Mr. Rowe was prescribed NSAIDS and physical therapy by his orthopedist to treat his ongoing shoulder symptoms. Thus, the severity requirement in this case requires the finding that Petitioner's injury had not yet fully recovered three weeks later.

Here – and despite the lack of clear record evidence after January 4th - I find that the severity requirement has been *just barely* met in Petitioner's favor. It is simply more likely than not that a shoulder injury that was still causing moderate pain after five months and 9 days (which is 162 days), and which was deemed worthy of additional treatment (in the form of NSAIDS and physical therapy) would not have fully resolved within the next three weeks. Indeed, during Mr. Rowe's December 16, 2016 appointment, his medical provider noted that Petitioner's injury may take "up to *2 years* to resolve on it[s] own" (emphasis added). Ex. 5 at 12. This assertion is consisted with what is known about SIRVA, and the length of time it can take for the injury to fully heal, and thus corroborates the severity finding in this case. Moreover, I balance the absence of record evidence showing treatment after January 26, 2017, with the equal absence of evidence that the injury *had* resolved. Overall, such circumstances produce at worst a "tie" in evidence that should go to the Petitioner. *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Spec. Mstr. Aug. 29, 2013).

IV.    **Conclusion**

For the reasons stated above, I find, based on the record as a whole, that Petitioner has established that he suffered the residual effects of his vaccine-related injury for at least six months.  Additional proceedings and deadlines are set forth in a separate scheduling order.

**IT IS SO ORDERED.**

**s/ Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master